*E-FILED*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-8989-GHK (Ex) | Date | February 10, 2016 |
|---|---|---|---|
| Title | *Vartan Yaralian v. James Fastovsky, et al.* | | |

| **Presiding: The Honorable** | **GEORGE H. KING, CHIEF U.S. DISTRICT JUDGE** | |
|---|---|---|
| Beatrice Herrera | N/A | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiff: | | Attorneys Present for Defendants: |
| None | | None |

**Proceedings:**  **(In Chambers) Order Re:** Plaintiff's Motion to Remand (Dkt. 10)

This matter is before us on the above-captioned Motion. We have considered the papers filed in support of and in opposition to this Motion and deem this matter appropriate for resolution without oral argument. L.R. 7-15. As the Parties are familiar with the facts, we will repeat them only as necessary. Accordingly, we rule as follows:

**I.   BACKGROUND**

**A.   Procedural History**

On October 7, 2015, Plaintiff Vartan Yaralian filed this action in state court against Defendants James Fastovsky ("Fastovsky"), K.G. Holdings, Inc.,[1] and Does 1-25. (Dkt. 1, Notice of Removal ("NOR"), Ex. 1, Compl.) Plaintiff alleged state law causes of action for (1) breach of agreement, (2) promissory estoppel, (3) accounting, (4) unjust enrichment, (5) conversion, (6) declaratory relief, and (7) constructive trust. (*Id.*) On November 18, 2015, Fastovsky removed this action pursuant to 28 U.S.C. § 1331, arguing that Plaintiff's second cause of action for promissory estoppel is completely preempted by the Employee Retirement Income Security Act of 1974 ("ERISA").[2] (NOR ¶ 1.) He claims that we have supplemental jurisdiction over Plaintiff's remaining causes of action. (*Id.* ¶ 6.)

On December 15, 2015, Plaintiff filed the instant Motion to Remand ("Motion"), arguing that his promissory estoppel claim is not completely preempted by ERISA. (Dkt. 10.) He also filed a First Amended Complaint ("FAC"), alleging state law causes of action for (1) breach of agreement, (2) promissory estoppel, (3) conversion, and (4) declaratory relief. (Dkt. 12.) Plaintiff added two paragraphs to the end of the promissory estoppel cause of action that did not appear in the original

---

[1] On December 15, 2015, Plaintiff filed a Notice of Dismissal as to K.G. Holdings, Inc. (Dkt. 13.)

[2] K.G. Holdings, Inc. filed a notice consenting to the removal. (Dkt. 5.)

*E-FILED*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-8989-GHK (Ex) | Date | February 10, 2016 |
|---|---|---|---|
| Title | *Vartan Yaralian v. James Fastovsky, et al.* | | |

Complaint. (*See id.* ¶¶ 25-26.) These two paragraphs are unrelated to the part of the promissory estoppel cause of action that Fastovsky contends is completely preempted by ERISA; in fact, they appear to allege a second promissory estoppel claim. (*See id.*) As such, in addressing whether the promissory estoppel cause of action is completely preempted, we focus only on those paragraphs appearing in both the original Complaint and the FAC. (*See id.* ¶¶ 20-24.)

### B. Factual Background

Plaintiff was an employee of accounting firm Friedman Minsk Cole and Fastovsky ("FMCF") before becoming a partner there. (FAC ¶ 20.) In 2000, while Plaintiff was still an employee, the firm established a Defined Benefit Pension Plan ("DB Plan") in which Plaintiff participated. (*Id.*) As of December 31, 2006,[3] he had an accrued benefit of allegedly $88,000. (*Id.*) When Plaintiff became a partner of FMCF, he purportedly received only about $47,000 of the total accrued benefit. (*Id.*) He brought the $41,000 disparity to the attention of Fastovsky, one of the firm's named partners, who allegedly "suggested that this discrepancy would be satisfactorily resolved at a later time when the DB Plan was ultimately terminated." (*Id.*)

Plaintiff later learned that the DB Plan would terminate on December 31, 2012. (*Id.* ¶ 21.) He approached Fastovsky again "to discuss the resolution of the approximately $41,000.00 shortfall in the accrued DB Plan benefit[.]" (*Id.*) Fastovsky purportedly "agreed with Plaintiff that [an] approximately $41,000.00, tax free (approximately $63,000.00 pre-tax)[] distribution was owed to Plaintiff but that it would be paid in the form of compensation, not as a pension distribution[,] and it was agreed that the issue would be satisfactorily resolved at a later time."[4] (*Id.*) However, even after Plaintiff left FMCF in November 2013, he did not receive remuneration for the "pension benefit shortfall." (*Id.* ¶¶ 23-24.) Plaintiff alleges that he relied to his detriment on Fastovsky's "promise that Plaintiff would be paid the approximately $41,000 pension benefit shortfall." (*Id.* ¶ 23.)

### II.   ANALYSIS

---

[3] Although Plaintiff does not explicitly explain, December 31, 2006 appears to be the last date on which he was an "employee" at FMCF. After this date, he was a partner/owner of the firm.

[4] Plaintiff does not explicitly explain in the FAC why the $41,000 should be "grossed up" to about $63,000. In a June 2013 letter to Fastovsky's lawyer, Plaintiff explains that "had [he] been paid [his] accrued benefit in 2006, [he] would have received a tax-free lump sum rollover distribution. Since, however, the plan has terminated, it appears that the only way [he] can be paid is through additional taxable income." (Dkt. 16, Keaster Decl., Ex. A at 2.) Plaintiff had rolled over the $47,000 he received from his employee pension plan to the plan he had as a partner without paying taxes on that amount. (*See id.* at 1.) Thus, Plaintiff likely also would have been able to roll over the $41,000 into a pension plan without paying taxes at that time. But being able to roll over a distribution does not immunize it from taxation. Instead, it merely defers the taxable event to a later time.

*E-FILED*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-8989-GHK (Ex) | Date | February 10, 2016 |
|---|---|---|---|
| Title | *Vartan Yaralian v. James Fastovsky, et al.* | | |

### A. Legal Standard

Remand may be ordered for lack of subject matter jurisdiction or any defect in the removal procedure. 28 U.S.C. § 1447(c). In light of the "strong presumption against removal jurisdiction," a defendant "always has the burden of establishing that removal is proper." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (internal quotation marks omitted). We "strictly construe the removal statute against removal jurisdiction," *id.*, and "[w]here doubt regarding the right to removal exists, a case should be remanded to state court," *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003); *see also* 28 U.S.C. § 1447(c).

A defendant can remove a case from state to federal court only if the case originally could have been filed in federal court. 28 U.S.C. § 1441(a); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987). Pursuant to 28 U.S.C. § 1331, a federal district court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." A case "arises under" federal law if a plaintiff's "well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 27-28 (1983). Under the well-pleaded complaint rule, the plaintiff typically is entitled to remain in state court if its complaint does not, on its face, affirmatively allege a federal claim. *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003). Moreover, "a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption," because jurisdiction may not properly be based on an anticipated defense created by federal law. *Franchise Tax Bd.*, 463 U.S. at 14.

There is an exception to the well-pleaded complaint rule if a cause of action is completely preempted by federal law. *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987). Where Congress completely preempts a particular area, any civil complaint raising that select group of claims will be treated as "necessarily federal in character." *Id.* at 63-64. Such a complaint may be recharacterized as containing claims that "arise under" federal law. *Beneficial Nat'l Bank*, 539 U.S. at 8.

### B. ERISA Complete Preemption

Complete preemption under ERISA § 502(a) is an exception to the well-pleaded complaint rule. *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 945 (9th Cir. 2009). Even where a complaint alleges only state law claims, if these claims are entirely encompassed by ERISA § 502(a), the complaint is converted into a federal claim for purposes of the well-pleaded complaint rule.[5] *Id.* Thus, Fastovsky bears the burden of demonstrating that Plaintiff's promissory estoppel claim is completely preempted under § 502(a) such that we have jurisdiction.

---

[5] A second doctrine, conflict preemption under ERISA § 514(a), serves as a defense to a state law action, but it does not confer federal question jurisdiction. *Marin Gen. Hosp.*, 581 F.3d at 945.

*E-FILED*
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-8989-GHK (Ex) | Date | February 10, 2016 |
|---|---|---|---|
| Title | *Vartan Yaralian v. James Fastovsky, et al.* | | |

Fastovsky claims that ERISA § 502(a)(1)(B) completely preempts Plaintiff's promissory estoppel claim. (Opp'n at 7.) Section 502(a)(1)(B) states that a civil enforcement action may be brought "by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." "[A]ny state law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy" is preempted because it "conflicts with the clear congressional intent to make the ERISA remedy exclusive." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004) (internal quotation marks omitted). In *Davila*, the Supreme Court devised a two-prong test to determine whether an asserted state law cause of action comes within § 502(a)(1)(B)'s scope. A state law cause of action is completely preempted if: (1) "an individual at some point in time, could have brought [the] claim under ERISA section 502(a)(1)(B)"; and (2) "where there is no other independent legal duty that is implicated by a defendant's actions."[6] *Id.* at 210; *Marin Gen. Hosp.*, 581 F.3d at 946. Accordingly, we turn to whether *Davila*'s two-prong test is satisfied here.

### 1. *Davila*'s First Prong

First, we ask "whether a plaintiff seeking to assert a state law claim 'at some point in time, could have brought [the] claim under ERISA § 502(a)(1)(B).'" *Id.* (quoting *Davila*, 542 U.S. at 210). "This part of the test is satisfied if two requirements are met: (1) the plaintiff's claim must fall within the scope of ERISA; and (2) the plaintiff must have standing to sue under ERISA." *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1350 (11th Cir. 2009) (citing *Marin Gen. Hosp.*, 581 F.3d at 947-49).

This prong of *Davila* is satisfied because Plaintiff could have brought his claim under ERISA "at some point in time." First, Plaintiff's claim is cognizable as a claim for benefits under ERISA § 502(a)(1)(B). Plaintiff alleges that he "was owed" approximately $41,000 tax free under the DB Plan, but that he never received that amount. (*See* FAC ¶ 21.) The essence of Plaintiff's claim is that Fastovsky promised to pay him the amount allegedly owed under the DB Plan. But if Plaintiff already had a right to the benefit-shortfall amount, then the promissory estoppel claim is nothing more than a claim for the value of accrued benefits. *See Cleghorn v. Blue Shield of Cal.*, 408 F.3d 1222, 1225 (9th Cir. 2005) (stating that "[c]laimants simply cannot obtain relief by dressing up an ERISA benefits claim in the garb of a state law [claim]") (internal quotation marks omitted). Accordingly, Plaintiff could have brought an action under ERISA § 502(a)(1)(B) to "recover benefits due to him" under the DB Plan.[7]

---

[6] Although *Davila* discussed complete preemption in reference to ERISA § 502(a)(1)(B), the Court's two-part test for complete preemption "applies to the other subparts of § 502(a) as well." *Fossen v. Blue Cross & Blue Shield of Mont., Inc.*, 660 F.3d 1102, 1108 (9th Cir. 2011).

[7] ERISA regulates any "employee pension benefit plan," which is defined as "any plan, fund, or program which was . . . established or maintained by an employer . . . to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program—(i) provides retirement income to employees, or (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond . . . ." 29 U.S.C. § 1002(2)(A). The DB Plan appears to

*E-FILED*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-8989-GHK (Ex) | Date | February 10, 2016 |
|---|---|---|---|
| Title | *Vartan Yaralian v. James Fastovsky, et al.* | | |

Second, Plaintiff has standing to pursue such a claim as a "participant" in an ERISA plan. *See* ERISA § 502(a)(1). Under ERISA, a "participant" is defined as "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan[8] which covers employees of such employer or members of such organization[.]" 29 U.S.C. § 1002(7). The Supreme Court has clarified that participants include "employees in, or reasonably expected to be in, currently covered employment, or former employees who have . . . a reasonable expectation of returning to covered employment or who have a colorable claim to vested benefits." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117 (1989). Plaintiff specifically alleges that he "participated" in the DB Plan while he "was an employee of FMCF," and he was paid only a portion of his "accrued benefit" under the plan. (FAC ¶ 20.) Accordingly, as an employee who accrued benefits under an employee pension plan, but who allegedly did not receive all accrued benefits, Plaintiff was a "participant" in an ERISA plan with a "colorable claim to vested benefits." *See Ruocco v. Bateman, Eichler, Hill, Richards, Inc.*, 903 F.2d 1232, 1236 (9th Cir. 1990) (concluding former employee had "colorable claim to vested benefits" because he was "a former plan participant who contributed financially to the plan"). Given that Plaintiff's claim is cognizable under ERISA § 502(a)(1)(B), and he is a "participant" in an ERISA-governed pension plan, *Davila*'s first prong is met.

### 2. *Davila*'s Second Prong

Second, we ask whether "there is no other independent legal duty that is implicated by a defendant's actions." *Davila*, 542 U.S. at 210. "If there is some other independent legal duty beyond that imposed by an ERISA plan, a claim based on that duty is not completely preempted under § 502(a)(1)(B)." *Marin Gen. Hosp.*, 581 F.3d at 949. "State law legal duties are not independent of ERISA where interpretation of the terms of the benefit plan 'forms an essential part' of the claim, and legal liability can exist 'only because of [the] administration of ERISA-regulated benefit plans.'" *McGill v. Pac. Bell Tele. Co.*, — F. Supp. 3d — , 2015 WL 6039267, at *7 (C.D. Cal. Oct. 15, 2015) (quoting *Davila*, 542 U.S. at 213). Moreover, if a state law claim is identical to a right guaranteed by ERISA or "merely duplicate[s] rights and remedies available under ERISA," then it is not independent of ERISA. *See Fossen*, 660 F.3d at 1111. The Supreme Court has cautioned that "distinguishing between pre-empted and non-pre-empted claims based on the particular label affixed to them would elevate form over substance and allow parties to evade the pre-emptive scope of ERISA simply by relabeling their . . . claims." *Davila*, 542 U.S. at 214 (internal quotation marks omitted); *see also Fossen*, 660 F.3d at 1111.

---

be a pension plan governed by ERISA given that Plaintiff alleges that he should have received accrued benefits when his employment ended and he became an owner/partner of FMCF. (*See* FAC ¶ 20.)

[8] "Employee benefit plan" means "an employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan." 29 U.S.C. § 1002(3).

*E-FILED*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-8989-GHK (Ex) | Date | February 10, 2016 |
|---|---|---|---|
| Title | *Vartan Yaralian v. James Fastovsky, et al.* | | |

*Davila*'s second prong is also satisfied here. As explained above, at its core, Plaintiff's promissory estoppel claim is a claim for accrued benefits under the DB Plan. In fact, Plaintiff seeks nothing more than the amount of benefits allegedly owed to him under the plan, albeit in the form of compensation. (*See* FAC ¶ 24 (characterizing the relief sought for the promissory estoppel claim as "the monies owed to Plaintiff" pursuant to the benefit shortfall).) Moreover, the underlying facts, at least as pled, reveal that Plaintiff's claim is based on an alleged obligation under ERISA. Fastovsky would not have agreed to pay the benefit shortfall if Plaintiff had been owed nothing under the plan. Indeed, Fastovsky allegedly promised to pay the shortfall as compensation only *after* he "agreed with Plaintiff that approximately $41,000, tax free . . . was owed to Plaintiff[.]" (*Id.* ¶ 21.) Furthermore, assuming Plaintiff was owed benefits under the DB Plan, as he claims he was, then he would have had a right to those benefits under ERISA regardless of any promise to pay them as compensation. Thus, even though the promissory estoppel claim involves a purported "promise" that is in theory independent of the plan, the "promise" was premised on an existing obligation under the plan. *Cf. Pierce v. Wells Fargo Bank, N.A.*, 380 F. App'x 635, 636 (9th Cir. 2010) (concluding employee's state law claims based on employer's oral promises to pay an amount *equivalent* to benefits under an ERISA plan were not completely preempted because the promises were "in *no way based* on an obligation under an ERISA plan" and because the plaintiff acknowledged that the amount was not owed under the plan (emphasis added)). To say that the promissory estoppel claim in this case is independent of ERISA would be to "elevate form over substance," which the *Davila* Court explicitly disapproved. *See* 542 U.S. at 214 (internal quotation marks omitted).

Plaintiff, who fails to even address the two-prong *Davila* test, continually emphasizes the compensation aspect of the alleged promise. He argues that the promissory estoppel claim had "roots in a Defined Benefits Plan, [but] transmuted into a simple promise to pay money *as compensation* (not as a pension distribution)[.]" (Mot. at 10 (emphasis in original); *see also id.* at 7.) That Plaintiff seeks the amount allegedly owed under the DB Plan as compensation rather than as pension benefits does not make his claim independent of ERISA. The only reason Plaintiff seeks compensation rather than pension benefits is because the DB Plan terminated. Plaintiff explains this reason in an email sent to Fastovsky's lawyer in July 2013: "As I discussed with [Fastovsky], had I been paid my accrued benefit in 2006, I would have received a tax-free lump sum rollover distribution. Since, however, the plan has terminated, it appears that the only way I can be paid is through additional taxable income." (Dkt. 16, Keaster Decl., Ex. A at 2.)

Moreover, given existing case law and ERISA's comprehensive remedial scheme, it is plausible that a pension plan participant can have a claim for benefits even after the plan has terminated. For example, in *Preite v. Charles of the Ritz Group, Ltd. Pension Plan*, 471 F. Supp. 2d 1271, 1273 (M.D. Fla. 2006), an employee accrued a benefit under his employer's pension plan and terminated his employment while the plan was still active. *Id.* When he left his employer, he was told he would receive the vested benefits once he turned 65 years old. *Id.* Subsequently, the employer was bought out by a successor company that terminated the plan. *Id.* at 1274. When the employee turned 65, he did not receive the allegedly vested benefits under the then-terminated plan. *Id.* at 1275-76. He sued the successor company—the "plan sponsor"—under ERISA § 502(a)(1)(B). *Id.* at 1277-78. The fact that

*E-FILED*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-8989-GHK (Ex) | Date | February 10, 2016 |
|---|---|---|---|
| Title | *Vartan Yaralian v. James Fastovsky, et al.* | | |

the plan no longer existed did not prevent a suit under § 502(a)(1)(B). *Id.* at 1282. In coming to this conclusion, the court explained that "the obligation of the Plan sponsor to provide benefits which are due and owing survives termination of the Plan. . . . [I]f the Plan sponsor fails to properly distribute or account for all benefits owed before terminating the Plan, the Plan sponsor or administrator may be liable for the payment of those benefits." *Id.*

Relatedly, in breach-of-fiduciary-duty suits, courts have permitted participants of terminated pension plans who did not receive all of their vested benefits to seek equitable relief under ERISA § 502(a)(2) or (a)(3).[9] In such a context, the Ninth Circuit has stated that "even after plan participants and beneficiaries have received their actuarially vested benefits from the plan, the plan should be viewed as continuing to exist for the purpose of distributing . . . equitably vested benefits." *See, e.g.*, *Waller v. Blue Cross of Cal.*, 32 F.3d 1337, 1339 (1994) (internal alterations and citation omitted) (holding that participants and beneficiaries of a terminated pension plan had "standing to pursue the equitable remedy of a constructive trust to distribute defendants' allegedly ill-gotten profits to the former participants and beneficiaries of the Plan"); *Amalgamated Clothing & Textile Workers v. Murdock*, 861 F.2d 1406, 1419 (9th Cir. 1988) (similar). Indeed, the termination of an ERISA plan should not insulate fiduciaries from liability or strip participants of standing to bring an ERISA suit that, but for the termination, they otherwise would have been able to bring. *Cf. Murdock*, 861 F.2d at 1418-19 ("If under the circumstances of this case plaintiffs are denied standing, then fiduciaries may misuse ERISA plan assets and—by paying benefits and terminating the plan—personally profit from their breach of the duty of loyalty and insulate themselves from liability."). The ability of plan participants to bring ERISA claims even after plan termination is also consistent with the stated policy of ERISA, which broadly provides access to federal courts: "It is hereby declared to be the policy of this chapter to protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries, . . . by providing for appropriate remedies, sanctions, and *ready access to the Federal courts*." 29 U.S.C. § 1006(b) (emphasis added).

In sum, both prongs of the *Davila* test are satisfied. First, Plaintiff could have brought his claim under § 502(a)(1)(B) of ERISA because, in essence, his claim is nothing but a request for accrued benefits under an ERISA plan. Second, Plaintiff's claim is not independent of ERISA because the claim merely duplicates the claim he could have brought under ERISA and derives from DB Plan benefits allegedly withheld from him. Moreover, the fact that the DB Plan no longer exists does not appear to prevent a suit under ERISA. The promissory estoppel claim therefore is completely preempted by

---

[9] Section 502(a)(2) authorizes suits to obtain remedies for breach of fiduciary duty available under ERISA § 409. Section 409 contains a catchall provision permitting "equitable or remedial relief as the court may deem appropriate." ERISA § 502(a)(3) states that "[a] civil action may be brought by a participant, beneficiary, or fiduciary . . . (B) to obtain other appropriate relief (i) to redress . . . violations [of this subchapter or the terms of the plan]."

We express no opinion on whether Plaintiff may have a claim under ERISA for a breach of fiduciary duty. We merely point out that participants and beneficiaries of ERISA-governed plans have brought § 502(a) claims even after their plans have terminated.

*E-FILED*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-8989-GHK (Ex) | Date | February 10, 2016 |
|---|---|---|---|
| Title | *Vartan Yaralian v. James Fastovsky, et al.* | | |

§ 502(a), and we have subject matter jurisdiction over it. To the extent the promissory estoppel cause of action in the FAC concerns Fastovsky's alleged promise to pay the $41,000 in vested benefits, (*see* FAC ¶¶ 20-24), it is dismissed as completely preempted. Plaintiff is granted leave to replead this claim to assert an appropriate claim under ERISA.

### III.   CONCLUSION

For the foregoing reasons, Plaintiff's Motion is **DENIED** as to the preempted part of the promissory estoppel cause of action only. We now grant Plaintiff leave to replead this completely preempted claim as an appropriate one under ERISA. Should Plaintiff elect to file a Second Amended Complaint ("SAC"), he **SHALL** do so **within 30 days hereof** in full compliance with this Order. If Plaintiff files a SAC, Fastovksy **SHALL** respond to it within **30 days thereafter**. We address the remaining state law claims in our concurrently filed Order to Show Cause Re: Supplemental Jurisdiction ("OSC").

Fastovsky has filed a motion to dismiss the FAC, (Dkt. 17), which is set for hearing on February 29, 2016 at 9:30 a.m. To the extent the motion to dismiss concerns the completely preempted aspect of the promissory estoppel cause of action, it is **DENIED as moot**. To the extent the motion concerns the remaining state law claims, it is **TAKEN OFF CALENDAR** and **STAYED** pending the response to the OSC.

**IT IS SO ORDERED.**

                                                                                   :

                                    Initials of Deputy Clerk    AB for Bea